IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 13-0936

_____

FILED

**October 2, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ESTELLA ROBINSON,
Defendant Below, Petitioner

v.

CITY OF BLUEFIELD,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Mercer County
The Honorable William J. Sadler, Judge
Civil Action No. 13-M-AP-7-WS

REVERSED AND REMANDED

_____

Submitted: September 16, 2014
Filed: October 2, 2014

Gerald R. Linkous, Esq.
Mercer County Public Defender Corp.
Princeton, West Virginia
Counsel for the Petitioner

Brian K. Cochran, Esq.
Brewster, Morhous, Cameron, Caruth,
Moore, Kersey, & Stafford PLLC
Bluefield, West Virginia
Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.
JUSTICE BENJAMIN concurs and reserves the right to file a concurring Opinion.
JUSTICE LOUGHRY dissents and reserves the right to file a dissenting Opinion.
JUSTICE WORKMAN dissents and reserves the right to file a dissenting Opinion.

1.      "When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syllabus Point 1, *Vector Co. v. Bd. of Zoning Appeals of Martinsburg*, 155 W.Va. 362, 184 S.E.2d 301 (1971).

2.      Before the destruction of a dog may be ordered under the authority of W.Va. Code § 19-20-20 [1981], satisfactory proof that the dog is "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals" must be presented before a circuit court or a magistrate.

JUSTICE KETCHUM:

Estella Robinson ("Ms. Robinson") appeals from an order entered by the Circuit Court of Mercer County affirming a municipal court's order to kill her dog. The circuit court concluded that the municipal court had the authority and jurisdiction to order the destruction of her dog.

On appeal to this Court, Ms. Robinson argues that the circuit court erred when it concluded that the municipal court had the authority to order the destruction of her dog. After review, we agree with Ms. Robinson. We therefore reverse the circuit court's order affirming the municipal court's order to kill Ms. Robinson's dog.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2013, Bluefield Animal Control Officer Randall Thompson responded to a complaint about two dogs at Ms. Robinson's residence. The complaint stated that one dog was running at large and that a second dog had inadequate shelter. While investigating the complaint at Ms. Robinson's residence, Officer Thompson was attacked by one of Ms. Robinson's dogs, Major. Major was "tied-up" when Officer Thompson arrived at the residence. While Officer Thompson was talking to Ms. Robinson, Major broke free from the chain and bit Officer Thompson on both of his hands. Officer Thompson sought medical treatment following this incident.

1

The City of Bluefield subsequently brought charges against Ms. Robinson in its municipal court, charging her with having a dangerous animal in violation of Bluefield City Ordinance § 4-49. Ordinance § 4-49 states:

> No person shall own, keep or harbor any dangerous animal known by him to be vicious, dangerous or in the habit of biting or attacking persons, whether or not such dog wears a tag or muzzle, and upon satisfactory proof that such animal is vicious, dangerous or in the habit of biting or attacking persons, municipal judge may order any police officer or the animal control officer to cause such animal to be killed. Vicious or dangerous animals are declared to be a public nuisance and a menace to the public safety.

In April 2013, Ms. Robinson pled guilty to violating Bluefield City Ordinance § 4-49. After the plea was entered, the municipal court ordered the dog to be killed. However, the municipal court stayed the order for thirty days to allow Ms. Robinson to (1) seek an expert opinion on whether the dog could be rehabilitated, and (2) to find a home for the dog outside of Bluefield. Ms. Robinson appeared before the municipal court on May 15, 2013, and informed the court that she found a home for the dog outside of Bluefield. However, she stated that she did not have an expert opinion that the dog could be rehabilitated.[1] Following this hearing, the municipal court again ordered that the dog be killed.

---

[1] Ms. Robinson asserts that she and her counsel believed that the municipal court stated Major would not be destroyed if she *either* found a home for him outside of Bluefield or if an expert determined that Major could be rehabilitated to prevent further vicious behavior. The appendix-record does not contain a transcript or a recording from

(continued . . .)

Ms. Robinson appealed the municipal court's order to the circuit court. The circuit court conducted a hearing on July 24, 2013, on the sole issue of whether the municipal court had the authority and jurisdiction to order the destruction of a dog pursuant to Ordinance § 4-49. The circuit court concluded that under W.Va. Code § 8-12-5(26) [2008], the municipal court had the authority to order the destruction of Ms. Robinson's dog. The circuit court entered an order on July 31, 2013, affirming the municipal court's order. After entry of this order, Ms. Robinson filed the present appeal.

## II.

## STANDARD OF REVIEW

The sole issue presented in this appeal is whether the circuit court erred when it determined that the municipal court had the authority to order the destruction of Ms. Robinson's dog. Our review of the circuit court's ruling is *de novo*. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *Accord* Syllabus Point 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466

the municipal court hearings. Ms. Robinson eventually obtained a report from an expert who stated that Major could be rehabilitated.

3

S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.").

With the foregoing in mind, we consider the parties' arguments.

## III.

## ANALYSIS

Before analyzing the parties' arguments, we emphasize that the sole issue before this Court on appeal is the legal question of whether a municipality may enact an ordinance vesting its municipal court with the authority to order the destruction of a dog found to be vicious, dangerous, or in the habit of biting or attacking persons. Whether Ms. Robinson's dog was "vicious, dangerous or in the habit of biting or attacking persons" is not before this Court.[2]

Turning to the legal issues before us, we note that "[m]unicipalities are but political subdivisions of the state, created by the Legislature for purposes of governmental convenience, deriving not only some, but all, of their powers from the Legislature." *Booten v. Pinson*, 77 W.Va. 412, 421, 89 S.E. 985, 989 (1915). This Court

---

[2] During oral argument, counsel for the City of Bluefield discussed Officer Thompson's injuries. While we are mindful of these injuries and do not seek to minimize them, the only issue before this Court is the narrow, legal question concerning the scope of a municipal court's authority.

addressed the source and scope of municipal power and authority in Syllabus Point 1 of *Brackman's Inc. v. City of Huntington*, 126 W.Va. 21, 27 S.E.2d 71 (1943), stating:

> A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the Constitution, or delegated to it by the law-making authority of the State. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted.

The Court reaffirmed this holding in *Miller v. City of Morgantown*, 158 W.Va. 104, 109, 208 S.E.2d 780, 783 (1974), stating, "A municipal corporation possesses only the power and authority given to it by the legislature." *See also*, Syllabus Point 2, *Hyre v. Brown*, 102 W.Va. 505, 135 S.E. 656 (1926) ("A municipal corporation possesses and can exercise only the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the accomplishment of the declared objects and purposes of the corporation- not simply convenient, but indispensable." (Citation omitted.)).

This Court has held that when a municipal ordinance conflicts with a statute, the ordinance is void. Hence, "[w]hen a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syllabus Point 1, *Vector Co. v. Bd. of Zoning Appeals of Martinsburg*, 155 W.Va. 362, 184 S.E.2d 301 (1971). *Accord* Syllabus Point 1, *State ex rel. Wells v. City of Charleston*, 92 W.Va. 611, 115 S.E. 576 (1922) ("When a municipal ordinance is opposed to the policy of the state in relation to the subject-matter thereof and in conflict with the statute of the state in relation thereto,

5

the ordinance is void to the extent of its conflict with the statute and should not be enforced.").

In the present case, the municipal court was acting pursuant to the authority granted to it by Ordinance § 4-49.[3] The City of Bluefield asserts that Ordinance § 4-49 was enacted under the authority granted to municipalities in W.Va. Code § 8-12-5(26). This code section, entitled "*General powers* of every municipality and the governing body thereof" (emphasis added), states:

> In addition to the powers and authority granted by: (i) The Constitution of this state; (ii) other provisions of this chapter; (iii) other general law; and (iv) any charter, and to the extent not inconsistent or in conflict with any of the foregoing except special legislative charters, every municipality and the governing body thereof shall have plenary power and authority therein by ordinance or resolution, as the case may require, and by appropriate action based thereon: . . .
>
> (26) To regulate or prohibit the keeping of animals or fowls and to provide for the impounding, sale or destruction of animals or fowls kept contrary to law or found running at large[.]

While W.Va. Code § 8-12-5(26) sets forth the *general* powers a municipality has to provide for the destruction of *animals or fowls kept contrary to law or found running at large*, the Legislature has enacted an entire, specific statutory scheme

---

[3] The *West Virginia Constitution* states that municipalities, cities and towns "shall have jurisdiction to enforce municipal ordinances." Art. VIII § 11.

addressing the regulation of *dogs* in W.Va. Code § 19-20-1 *et seq*. W.Va. Code § 19-20-20 addresses the process to be followed when a dog is alleged to be "vicious, dangerous or in the habit of biting or attacking persons or other dogs or animals." It specifically vests jurisdiction in circuit and magistrate courts. W.Va. Code § 19-20-20 states:

> Except as provided in section twenty-one of this article, no person shall own, keep or harbor any dog known by him to be vicious, dangerous, or in the habit of biting or attacking other persons, whether or not such dog wears a tag or muzzle. *Upon satisfactory proof before a circuit court or magistrate* that such dog is vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals, the judge may authorize the humane officer to cause such dog to be killed.

(Emphasis added.)

Ms. Robinson argues that under W.Va. Code § 19-20-20, the City of Bluefield was required to present satisfactory proof that her dog was "vicious, dangerous, or in the habit of biting or attacking other persons" before a circuit court or a magistrate. Because the City of Bluefield did not offer such proof before a circuit court or a magistrate, Ms. Robinson asserts that the circuit court erred by affirming the municipal court's order.

By contrast, the City of Bluefield argues that W.Va. Code § 19-20-20 should be read in conjunction with W.Va. Code § 8-12-5(26). The City of Bluefield asserts that both of these statutes permit an order killing a dog upon satisfactory proof that a dog is "vicious, dangerous, or in the habit of biting or attacking other persons." According to the City of Bluefield, municipal courts possess this authority under W.Va.

7

Code § 8-12-5(26), while circuit courts and magistrate courts possess this authority pursuant to W.Va. Code § 19-20-20.

Our resolution of this issue begins with a review of our rules of statutory construction. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. at 587, 466 S.E.2d at 438; *see also* Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

After review, we agree with Ms. Robinson and find that under the plain language of W.Va. Code § 19-20-20, the City of Bluefield was required to set forth satisfactory proof that Ms. Robinson's dog was "vicious, dangerous, or in the habit of biting or attacking other persons" before a circuit court or a magistrate, not a municipal court.

Before a dog that is alleged to be vicious, dangerous, or in the habit of biting or attacking other persons may be destroyed by a municipality, it must provide "*satisfactory proof before a circuit court or magistrate that such dog is vicious,*

8

dangerous, or in the habit of biting or attacking other persons." (Emphasis added.) The Legislature specifically vested the authority to determine whether a dog is "vicious, dangerous, or in the habit of biting or attacking other persons" with two elected judicial officers—circuit court judges and magistrates.[4] The Legislature did not vest municipal court judges—non-elected judicial officers—with the authority to order the destruction of a vicious or dangerous dog.

This Court has stated that "a statute which specifically provides that a thing is to be done in a particular manner normally implies that it shall not be done in any other manner." *Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W.Va. 484, 492, 647 S.E.2d 920, 928 (2007). W.Va. Code § 19-20-20 confines the authority to order the destruction of a dog alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons" to circuit courts and magistrates. Had the Legislature intended for courts other

---

[4] This Court described the process a circuit court or magistrate court should follow when presented with an allegedly vicious or dangerous dog pursuant to W.Va. Code § 19-20-20. In *Durham v. Jenkins*, 229 W.Va. 669, 674, 735 S.E.2d 266, 270 (2012), the Court stated:

> For a magistrate or circuit court to obtain authority to order a dog killed, the magistrate or judge must first find, upon conducting a criminal proceeding, that a crime described in the first sentence of § 19-20-20 has been committed. This Court holds that the authority to order a dog killed pursuant to W.Va.Code § 19-20-20 (1981), stems solely from a criminal proceeding, and a private cause of action may not be brought for the destruction of a dog under this section.

9

than circuit courts or magistrate courts, such as municipal courts, to possess the authority to order the destruction of a dog upon satisfactory proof that the dog was "vicious, dangerous, or in the habit of biting or attacking other persons," W.Va. Code § 19-20-20 could have authorized "any court or magistrate" to make this determination. In fact, the Legislature expressly permitted "any court or magistrate" to decide other matters relating to the control and management of dogs in W.Va. Code 19-20-1 *et seq*. *See* W.Va. Code § 19-20-14 [1986] and W.Va. Code § 19-20-17 [1986]. By contrast, the Legislature specifically restricted the authority to order the destruction of a dog alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons" to circuit courts and magistrates.

While acknowledging that municipal courts do not possess the authority to order the destruction of a dog found to be vicious or dangerous under W.Va. Code § 19-20-20, the City of Bluefield argues that it had the authority to enact Ordinance § 4-49 based on the general authority granted to municipalities in W.Va. Code § 8-12-5(26). W.Va. Code § 8-12-5(26) addresses the general power a municipality has to provide for the destruction of "animals or fowls" kept contrary to law or found running at large. This statute does not specifically discuss dogs, nor does it discuss the process to be followed when a dog is alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." By contrast to the general power of a municipality to provide for the destruction of "animals or fowls" kept contrary to law or found running at large contained in W.Va. Code § 8-12-5(26), W.Va. Code § 19-20-20

10

sets forth the specific process to be followed when it is alleged that a dog is "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals."

This Court has previously held, "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter[.]" Syllabus Point 1, in part, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984). *Accord Tillis v. Wright*, 217 W.Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("[S]pecific statutory language generally takes precedence over more general statutory provisions."); *Bowers v. Wurzburg*, 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999) ("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." (Citations omitted)); *Daily Gazette Co., Inc. v. Caryl*, 181 W.Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute[.]" (Citations omitted)).

W.Va. Code § 8-12-5(26) and W.Va. Code § 19-20-20 address the same general subject matter—the regulation and management of animals. W.Va. Code § 19-20-20 addresses the regulation of a specific animal that is alleged to have behaved in a specific manner—a dog alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." Conversely, W.Va. Code § 8-12-5(26) addresses "animals or fowls" that are "kept contrary to law or found running at large." Unlike the specific direction provided in W.Va. Code § 19-20-20, W.Va. Code § 8-12-5(26) does not address (1) dogs that are alleged to be "vicious, dangerous, or in the habit

11

of biting or attacking other persons or other dogs or animals," or (2) courts that are authorized to determine whether a dog is "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." Under basic rules of statutory construction, it is clear that the Legislature intended for the specific statute (W.Va. Code § 19-20-20) to control over the general statute (W.Va. Code § 8-12-5(26)).

The present case presents the precise factual scenario contemplated by W.Va. Code § 19-20-20—Ms. Robinson's dog was allegedly "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." W.Va. Code § 8-12-5(26) provides no direction on the process to be followed when a dog is alleged to be "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals." We therefore conclude that under our rules of statutory construction, the specific direction addressing allegedly vicious dogs contained in W.Va. Code § 19-20-20 prevails over the general direction regarding "animals or fowls" that are kept contrary to law or found running at large" contained in W.Va. Code § 8-12-5(26).

Based on the foregoing, we hold that before the destruction of a dog may be ordered under the authority of W.Va. Code § 19-20-20 [1981], satisfactory proof that the dog is "vicious, dangerous, or in the habit of biting or attacking other persons or other dogs or animals" must be presented before a circuit court or a magistrate.[5] Applying this

---

[5] This holding is limited to the narrow circumstance in which a municipal judge, pursuant to a municipal ordinance, orders the destruction of a dog that is alleged to be
(continued . . .)

12

holding to the present case, we find that Bluefield Ordinance § 4-49 is void to the extent that it allows a municipal court to order the destruction of a dog.[6]

## IV.

## CONCLUSION

The circuit court's July 31, 2013, order affirming the municipal court's order to kill Ms. Robinson's dog is reversed. This matter is remanded to the municipal court for entry of an order vacating its order to kill Ms. Robinson's dog.

Reversed and Remanded.

---

"vicious, dangerous, or in the habit of biting or attacking other persons." This holding does not have any effect on any other statute setting forth the general rules and regulations governing the control and management of dogs.

[6] A municipality may enact an ordinance prohibiting a person from owning, keeping or harboring a dog known to be vicious, dangerous or in the habit of biting or attacking persons, and may pursue charges against an owner of such a dog in municipal court. However, a municipality seeking an order to kill a vicious or dangerous dog must do so in circuit or magistrate court and follow the procedure this Court set forth in *Durham v. Jenkins*, 229 W.Va. 669, 674, 735 S.E.2d 266, 270 (2012) ("For a magistrate or circuit court to obtain authority to order a dog killed, the magistrate or judge must first find, upon conducting a criminal proceeding, that a crime described in the first sentence of § 19-20-20 has been committed. This Court holds that the authority to order a dog killed pursuant to W.Va. Code § 19-20-20 (1981), stems solely from a criminal proceeding, and a private cause of action may not be brought for the destruction of a dog under this section.").

13