IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 21-0412

_____

FILED

**April 26, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

NATHAN SCOTT STEPP, individually as a member
of the West Virginia State Police, ZACH W. HARTLEY, individually as a member
of the West Virginia State Police, OKEY S. STARSICK, individually as a member
of the West Virginia State Police, ROBERT B. HICKMAN, individually as a member
of the Roane County Sheriff's Department, ROANE COUNTY
SHERIFF'S DEPARTMENT, and
WEST VIRGINIA STATE POLICE,
Defendants Below,
Petitioners,

v.

BRADLEY COTTRELL, on behalf of the Estate of
Bernard Dale Cottrell,
Plaintiff Below,
Respondent.

_____

Certified Questions from the United States District Court
for the Southern District of West Virginia
The Honorable Thomas E. Johnston, Chief Judge
Civil Action No. 2:18-CV-01281

CERTIFIED QUESTIONS ANSWERED

_____

Submitted: January 5, 2022
Filed: April 26, 2022

Michael D. Mullins, Esquire
Candace Haley Bunn, Esquire
James E. McDaniel, Esquire
Robert L. Bailey, Esquire
Steptoe & Johnson PLLC
Charleston, West Virginia

Russell A. Williams, Esquire
New, Taylor & Associates
Beckley, West Virginia

Counsel for Petitioners Stepp, Hartley,
Starsick, and West Virginia State Police

Charles R. Bailey, Esquire
John P. Fuller, Esquire
Jeffrey Michael Carder, Esquire
Bailey & Wyant
Charleston, West Virginia
Counsel for Petitioners Hickman and
Roane County Sheriff's Department

Nicolette A. Ward, Esquire
Romanucci & Blandin, LLC
Chicago, Illinois
*Pro Hac Vice*
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE ALAN D. MOATS, sitting by temporary assignment, not participating.

SYLLABUS BY THE COURT

1.      "'A *de novo* standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998). Syllabus Point 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017).'" Syllabus Point 1, *Fields v. Mellinger*, 244 W. Va. 126, 851 S.E.2d 789 (2020).

2.      "'This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court.' Syllabus Point 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999)." Syllabus Point 1, *Sheehan v. Mortgage Electronic Registration Systems, Inc.*, 244 W. Va. 106, 851 S.E.2d 769 (2020).

3.      "A specific constitutional provision will be given precedence over a general constitutional provision relating to the same subject matter where the two cannot be reconciled." Syllabus Point 3, *State ex rel. Robb v. Caperton*, 191 W. Va. 492, 446 S.E.2d 714 (1994).

4.      Claims for excessive force by police officers during the course of arrest, alleging a violation of West Virginia's Constitution, must be analyzed under the

specific textual source of such protection, rather than as a broad, general claim under Article III, Section 10 alleging a violation of substantive due process.

Armstead, Justice:

The United States District Court for the Southern District of West Virginia

presents two certified questions to this Court:

> First, does West Virginia apply to its own Constitution the United States Supreme Court's rule as established in *Graham v. Connor*, 490 U.S. 386 (1989) and *United States v. Lanier*, 520 U.S. 259 (1997), which requires a constitutional claim that is covered by a specific constitutional provision to be analyzed under the standard specific to that provision and not under substantive due process?

> Second, if answered in the affirmative, is a claim brought under Article III, Section 10 of the West Virginia Constitution considered redundant where Plaintiffs also alleged an Article III, Section 6 claim but are no longer allowed to pursue Article III, Section 6 as an avenue for relief?

As discussed below, because we adopt *Graham* and its progeny, we answer both questions

in the affirmative.


## I.  FACTUAL AND PROCEDURAL BACKGROUND

This matter comes before the Court on two certified questions from the

United States District Court for the Southern District of West Virginia.  The parties

stipulated to certain facts that were contained in the district court's certification order,

which are summarized below.


On September 6, 2016, following a high-speed pursuit of decedent, Bernard

Dale Cottrell, along West Virginia Route 14 which ended in Roane County, West Virginia,

Petitioner police officers Stepp, Hartley, and Hickman each discharged their firearms and

1

Mr. Cottrell died as a result. Respondent, as administrator of decedent's estate, then filed a complaint in the United States District Court for the Southern District of West Virginia, under its federal question jurisdiction, alleging seven separate causes of action against Petitioners.[1] At issue in this appeal is Count IV of the complaint in which Respondent alleges violations of Article III, Sections 6 and 10 of the West Virginia Constitution.

There was extensive motions practice in the federal district court that resulted in the dismissal of some counts of the complaint. However, claims for battery (Count V) and negligence (Count VI) are still pending, as well as claims for violations of 42 U.S.C. § 1983 (Counts I and II). The certified questions at issue here revolve around summary judgment motions filed by Petitioners Stepp, Hartley, and Hickman arguing that the United States Supreme Court's holding in *Graham v. Connor*, 490 U.S. 386 (1989), barred a cause

---

[1] Count I alleges claims against Petitioners Stepp, Hartley, and Hickman under the Fourth Amendment for excessive force pursuant to 42 U.S.C. § 1983. Count II is a claim for supervisory liability against Petitioner Starsick under the Fourth Amendment, also pursuant to 42 U.S.C. § 1983. Count III was a 42 U.S.C. § 1983 *Monell* claim against Petitioner West Virginia State Police, which has been dismissed by the federal district court. Count IV is a claim against Petitioners Stepp, Hartley, and Hickman arising from Article III, Sections 6 and 10 of West Virginia's Constitution. Count V is a common law claim for battery against Petitioners Stepp, Hartley, and Hickman. Likewise, count VI is also a common law claim for negligence against the same Petitioners. Finally, count VII was another *Monell* claim under 42 U.S.C. § 1983 against Petitioner Roane County Sheriff's Department for excessive force, which was also dismissed.

The claims against Petitioners West Virginia State Police (Count III) and the Roane County Sheriff's Department (Count VII) sought no relief under the provisions of Article III, Section 10. The claims against Petitioner Starsick do not assert any causes of action arising from provisions of the West Virginia Constitution.

of action for excessive force under the substantive due process clause contained in Article III, Section 10 of West Virginia's Constitution. After granting summary judgment in favor of Petitioners Stepp and Hartley on those grounds, the district court certified the two questions outlined above to this Court.

## II. STANDARD OF REVIEW

"'A *de novo* standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998). Syllabus Point 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017).'" Syllabus Point 1, *Fields v. Mellinger*, 244 W. Va. 126, 851 S.E.2d 789 (2020). "'This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court.' Syllabus Point 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999)." Syllabus Point 1, *Sheehan v. Mortg. Elec. Registration Sys., Inc.*, 244 W. Va. 106, 851 S.E.2d 769 (2020).

## III. ANALYSIS

The district court has requested that we answer the following questions:

First, does West Virginia apply to its own Constitution the United States Supreme Court's rule as established in *Graham v. Connor*, 490 U.S. 386 (1989) and *United States v. Lanier*, 520 U.S. 259 (1997), which requires a constitutional claim that is covered by a specific constitutional provision to be analyzed under the standard specific to that provision and not under substantive due process?

3

Second, if answered in the affirmative, is a claim brought under Article III, Section 10 of the West Virginia Constitution considered redundant where Plaintiffs also alleged an Article III, Section 6 claim but are no longer allowed to pursue Article III, Section 6 as an avenue for relief?

Upon our review of the record, we believe the questions to be appropriately framed by the district court and we will answer them as drafted.

The questions are presented in light of *Graham* and *Lanier*, in which the Supreme Court concluded that claims of excessive force during the course of an arrest, investigatory stop, or other seizure, are analyzed not as due process claims, but under the specific provision in which they are enumerated – the search and seizure clause. In other words, the Supreme Court has concluded that the right to be free from excessive force in those circumstances is guaranteed by the search and seizure clause, not general notions of due process. The federal district court poses to us the question of whether a claim for excessive force under the constitution of West Virginia must likewise be alleged as a violation of the specific protections against unreasonable searches and seizures enumerated in Article III, section 6 of the Constitution of West Virginia, rather than the broader due process protections set forth in Article III, section 10 of the Constitution of West Virginia.

Similarly, in the second certified question posed by the federal district court, we are asked, in light of our recent holding in *Fields* that no private right of action for money damages exists for violations of the search and seizure clause in our state

Constitution, Article III, Section 6, if claims made under the due process clause are duplicative, or if Respondent may nonetheless find an alternate remedy under Section 10. *See* Syllabus Point 3, *Fields.*

To answer these questions, we will consider not only the relevant provisions of West Virginia's Constitution, but also those contained in the United States Constitution, and the precedent of this Court and the federal courts. The Due Process Clause in West Virginia's Constitution provides, "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W. VA. CONST. art. III § 10. "Inherent in the due process clause of the State Constitution are both the concept of substantive due process and the concept of equal protection of the laws." *State ex rel. Harris v. Calendine*, 160 W. Va. 172, 179, 233 S.E.2d 318, 324 (1977) (footnote omitted).

We must look to the plain language of Article III, Section 10, to determine if it allows for a cause of action for excessive force by police officers. *See State ex rel. Mountaineer Park, Inc. v. Polan*, 190 W. Va. 276, 283, 438 S.E.2d 308, 315 (1993) ("As in every case involving the application or interpretation of a constitutional provision, analysis must begin with the language of the constitutional provision itself."). In making such a determination, we are mindful that "'[c]ourts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution.' Syllabus point 3, *State ex rel. Casey v. Pauley*, 158 W. Va. 298, 210 S.E.2d 649 (1975)." Syllabus Point 2, *Fields*.

5

This Court has previously recognized, under a very unique set of facts, a private cause of action under Article III, Section 10 of our constitution. *See* Syllabus Point 2, *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996). In *Hutchison*, the plaintiff sought and received damages he incurred as a result of delays caused by the Huntington City Council requiring him to overcome several procedural hurdles in order to obtain a building permit. *Id*., 198 W. Va. at 146-7, 479 S.E.2d at 656-7. Our decision in *Hutchison* was clearly focused on damages flowing from a denial of procedural due process. *See id.*, 198 W. Va. at 150 n.21, 479 S.E.2d at 657 n.21. Reviewing the facts in *Hutchison*, as well as the fact that *Hutchison* dealt with procedural, rather than substantive, due process, we find that it provides little guidance in the case at bar. Indeed, we can identify no precedents allowing for recovery of monetary damages from excessive force by police officers under the substantive due process clause contained in Article III, Section 10.

The United States Supreme Court has analyzed substantive due process claims alleging excessive force by police officers and we find that analysis to be instructive. We note that the district court expressly sought this Court's opinion on whether the holdings of the United States Supreme Court in *Graham* and *Lanier* would apply to claims of excessive force by police officers seeking monetary damages under Article III, Section 10 of West Virginia's Constitution. Accordingly, we will now examine the body of law developed under our federal Constitution regarding this issue.

6

The due process clause of the Fourteenth Amendment states, in relevant part, "nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ." Interpreting this provision, *Graham* decided the question of "what constitutional standard governs a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of" such free citizen. *Graham*, at 388. Ultimately, this question comes down to whether such claims should be resolved under the Fourteenth Amendment's substantive due process clause or under the Fourth Amendment's "objective reasonableness" standard. *Id*. To determine which provision applies "[i]n addressing an excessive force claim [the analysis] begins by identifying the specific constitutional right allegedly infringed." *Id*, at 394.

> In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

*Id.* Following a broad discussion of these rights, the Supreme Court held:

> [T]hat *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of

7

> "substantive due process," must be the guide for analyzing these claims.

*Id.*, at 395 (emphasis in original). Following *Graham*, the United States Supreme Court clarified that "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

Our research shows that other states have adopted the *Graham* and *Lanier* standard for claims seeking monetary damages for excessive force by police officers under their respective constitutions. *See Randall v. Peaco*, 927 A.2d 83, 89 (Md. Ct. Spec. App. 2007) (a "claim is assessed under Fourth Amendment jurisprudence, rather than notions of substantive due process...."); *Lum v. Koles*, 314 P.3d 546, 556 n.38 (Alaska 2013) ("constitutional violations should be addressed 'by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard."). Additionally, the United States District Court for the Southern District of West Virginia has reasoned that this Court would follow *Graham*. "[A]ll claims that law enforcement officers used excessive force in the course of an arrest should be analyzed under Article III, Section 6, the state counterpart to the Fourth Amendment, rather than under a substantive due process approach." *Schoonover v. Clay Cty. Sheriff's Deptartment [sic]*, No. 2:19-CV-00386, 2020 WL 2573243, at *9 (S.D.W. Va. May 21, 2020). Despite

Respondent's argument that the West Virginia Constitution provides more protections than the federal Constitution, we agree with *Schoonover*. Indeed, we have previously held that:

> The provisions of our constitution relating to unreasonable search and seizure and protecting one accused of crime from being compelled to be a witness against himself, being substantially the same as the corresponding provisions of the federal constitution and taken therefrom, should be given a construction in harmony with the construction of the federal provisions by the Supreme Court of the United States.

Syllabus Point 2, *State v. Andrews*, 91 W. Va. 720, 114 S.E. 257 (1922).

We now turn to our maxims of statutory and constitutional interpretation. This Court, in the context of statutory interpretation, has recognized that specific statutes control over general statutes:

> This Court has previously held, "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter[.]" Syllabus Point 1, in part, *UMWA by Trumka v. Kingdon,* 174 W. Va. 330, 325 S.E.2d 120 (1984). *Accord Tillis v. Wright,* 217 W. Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("[S]pecific statutory language generally takes precedence over more general statutory provisions."); *Bowers v. Wurzburg,* 205 W. Va. 450, 462, 519 S.E.2d 148, 160 (1999) ("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." (Citations omitted)); *Daily Gazette Co., Inc. v. Caryl,* 181 W. Va. 42, 45, 380 S.E.2d 209, 212 (1989) ("The rules of statutory construction require that a specific statute will control over a general statute[.]" (Citations omitted)).

*Robinson v. City of Bluefield*, 234 W. Va. 209, 214, 764 S.E.2d 740, 745 (2014). This approach to statutory construction is also applicable to issues flowing from constitutional questions: "[q]uestions of constitutional construction are in the main governed by the same

general rules applied in statutory construction." Syllabus Point 1, *Winkler v. State of W. Va. School Building Authority*, 189 W. Va. 748, 434 S.E.2d 420 (1993). From this maxim, we have held that "[a] specific constitutional provision will be given precedence over a general constitutional provision relating to the same subject matter where the two cannot be reconciled." Syllabus Point 3, *State ex rel. Robb v. Caperton*, 191 W. Va. 492, 446 S.E.2d 714 (1994).

The specific constitutional provision in West Virginia's constitution that protects citizens from unreasonable searches and seizures provides:

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

W. Va. CONST. art III § 6. This language is considerably more specific in protecting the rights of our citizenry from unreasonable searches and seizures than the broad, general language, contained in Article III, Section 10. *Compare* W. Va. CONST. art III § 6 *with* W. Va. CONST. art. III § 10. The provisions of Article III, Section 6 provide a specific right to be protected. The provisions of Article III, Section 10 contain no such specificity.

Further, we have previously held that the "immediate constitutional interest protected by a prompt initial appearance is the prohibition against unreasonable searches and seizures, provided by the Fourth Amendment to the United States Constitution,

10

and Article III, § 6 of the West Virginia Constitution . . . ." *Rogers v. Albert*, 208 W. Va. 473, 476, 541 S.E.2d 563, 566 (2000). This is because:

> [D]ue process does not extend any further than the constitutional right to avoid unreasonable seizure. As the United States Supreme Court stated in *Gerstein,* "[t]he Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial." 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 869 n. 27, 43 L.Ed.2d 54; *see Baker v. McCollan,* 443 U.S. 137, 142–46, 99 S.Ct. 2689, 2693–96, 61 L.Ed.2d 433 (1979).

*Id.*, 208 W. Va. at 477, 541 S.E.2d at 567.

Having reviewed the express language of Article III, Sections 6 and 10 of West Virginia's Constitution, the United States Supreme Court's holdings in *Graham* and *Lanier,* and our prior law, we first find there is no separate cause of action for excessive force by police officers during the course of arrest within the plain language of Article III, Section 10. Second, as we discuss below, as in *Fields*, there are clearly other remedies available to Respondent. Third, this Court has previously held that specific constitutional provisions should control over general constitutional provisions. Claims of excessive force by police officers in the course of arrest are governed by the standards of the search and seizure clause contained in West Virginia's Constitution, Article III, Section 6. We therefore hold that claims for excessive force by police officers during the course of arrest, alleging a violation of West Virginia's Constitution, must be analyzed under the specific textual source of such protection, rather than as a broad, general claim under Article III,

11

Section 10 alleging a violation of substantive due process. Accordingly, we answer the first question in the affirmative.

In light of our answer to the first question, the district court further inquires if the Article III, Section 10 claim is redundant. We believe that it is. As we held above, Respondent's claim does not arise under broad due process protections but instead is one arising out of a violation of the right against illegal search and seizure under the specific constitutional protections in Article III, Section 6. However, we recently held in *Fields* that, "West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution." Syllabus Point 3, *Fields*.

In *Fields*, we answered a certified question from the United States District Court for the Southern District of West Virginia, asking this Court, "Does West Virginia recognize a private right of action for monetary damages for violations of Article III, Section 6 of the West Virginia Constitution?" *Fields*, 244 W. Va. at 129, 851 S.E.2d at 792. We answered this question in the negative, finding that "West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution." Syllabus Point 3, *Fields*. This holding was based upon the absence of any language in the Constitution providing a monetary remedy for violations of Article III, Section 6, the absence of a statutory scheme like that found in 42 U.S.C. § 1983 allowing for monetary damages to be recovered for violations of its

provisions, and the fact that there were alternative remedies available. *See id.*, 244 W. Va. at 129-136, 851 S.E.2d at 792-799.

*Fields* was decided by this Court just over a year ago. The judicial doctrine of *stare decisis* applies to its holding. As such,

> An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law.

Syllabus Point 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974). Our decision in *Fields* certainly fits the definition of "recently rendered" and there is no basis for deviation from such holding. *See Woodrum v. Johnson*, 210 W. Va. 762, 766 n. 8, 559 S.E.2d 908, 912 n. 8 (2001).

Respondent argues that *Fields* requires a finding that there is a separate and distinct cause of action under the general due process clause, since this Court has foreclosed claims for monetary damages under Article III, Section 6. Respondent further argues that the same reasoning applied in *Graham* and *Lanier* should not apply here since the alternative remedies for violation of the federal Constitution, namely actions under 42 U.S.C. § 1983, are not available for violations of the West Virginia Constitution. Important, however, is that in *Fields*, there were other remedies available:

> Fields has asserted state law claims for negligence in the hiring, retention, and/or supervision of employees; battery; and

13

> outrageous conduct/intentional infliction of mental, physical, and emotional distress. He also has asserted federal claims for excessive force under United States Code title 42 section 1983; a *Monell* claim and supervisory liability under United States Code title 42 section 1983; and unlawful conspiracy under United States Code title 42 sections 1983 & 1985.

*Fields*, 244 W. Va. at 136, 851 S.E.2d at 799.  Likewise, in this matter, there remain federal claims for excessive force and supervisory liability under 42 U.S.C. § 1983, and state common law claims for battery and negligence.[2]  Our holding in *Fields* is applicable here and there is no cause of action for monetary damages for excessive force by police officers under Article III, Section 6.  Accordingly, we answer the second certified question in the affirmative, that claims under Article III, Section 10 of the West Virginia Constitution are duplicative of claims brought under Article III, Section 6.

## IV.  CONCLUSION

Based upon our analysis, we answer both of the certified questions in the affirmative as follows:

Question One:      First, does West Virginia apply to its own Constitution the United States Supreme Court's rule as established in *Graham v. Connor*, 490 U.S. 386 (1989) and *United States v. Lanier*, 520 U.S. 259 (1997), which requires a constitutional

---

[2] Although these claims remain in the district court, our holding here should not be read as to indicate any position as to whether Respondent will prevail on those claims.

claim that is covered by a specific constitutional provision to be analyzed under the standard specific to that provision and not under substantive due process?

Answer: Yes. West Virginia applies the Rule stated in *Graham* and *Lanier* to its own constitution and claims for excessive force by police officers during the course of arrest, alleging a violation of West Virginia's Constitution, must be analyzed under the specific textual source of such protection, rather than as a broad, general claim under Article III, Section 10 alleging a violation of substantive due process.

Question Two: Second, if answered in the affirmative, is a claim brought under Article III, Section 10 of the West Virginia Constitution considered redundant where Plaintiffs also alleged an Article III, Section 6 claim but are no longer allowed to pursue Article III, Section 6 as an avenue for relief?

Answer: Yes. In light of our holding in *Fields v. Mellinger*, a claim for excessive force by police officers brought under Article III, Section 10 of our constitution is redundant to a claim brought under Article III, Section 6.

Certified Questions Answered.