IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 21-0831

_____

FILED

**November 6, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

KANAWHA COUNTY BOARD OF EDUCATION,
Respondent Below, Petitioner,

v.

BRENDA HALL AND ANTONIA VAUGHAN,
Petitioners Below, Respondents.

_____

Appeal from the Circuit Court of Kanawha County
Honorable Kenneth D. Ballard, Judge
Civil Action Nos. 21-AA-3 & 21-AA-4

REVERSED AND REMANDED WITH DIRECTIONS
_____

Submitted: October 10, 2023
Filed: November 6, 2023

Lindsey D. C. McIntosh, Esq.
General Counsel
Kanawha County Board of Education
Charleston, West Virginia
Attorney for Petitioner

Andrew J. Katz, Esq.
The Katz Working Families'
Law Firm, LC
Charleston, West Virginia
Attorney for Respondents

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.     "When reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. Pt. 1, *Martin v. Barbour Cnty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011).

2.     "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo."  Syl. Pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

3.     "The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect."  Syl. Pt. 4, *Taylor v. State Comp. Comm'r*, 140 W. Va. 572, 86 S.E.2d 114 (1955).

i

4. "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953).

5. "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2*, Smith v. State Workmen's Compensation Comm'r,* 159 W. Va. 108, 219 S.E.2d 361 (1975).

6. "Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938).

7. "'That which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' Syllabus point 14, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)." Syl. Pt. 4, *Smith v. State Workmen's Compensation Comm'r,* 159 W. Va. 108, 219 S.E.2d 361 (1975).

**HUTCHISON, Justice:**

The petitioner, the Kanawha County Board of Education, appeals the September 14, 2021, final order of the Circuit Court of Kanawha County that reversed a decision of the West Virginia Public Employees Grievance Board and found that the respondents, Brenda Hall and Antonia Vaughan, educational sign language interpreters who work with hearing-impaired students in high school classrooms, are full-time special education teachers and, therefore, qualify for the pay increase provided by West Virginia Code § 18A-4-2(e) (2019). In this appeal, the petitioner contends that the circuit court erred by (1) failing to find that the respondents' appeal of the Grievance Board's decision was mooted by the July 5, 2021, amendment to West Virginia Code § 18A-4-2(e); (2) applying the doctrine of collateral estoppel and finding that respondents are "teachers" pursuant to a 2014 decision of the Grievance Board; and (3) independently determining that the respondents are teachers. Upon consideration of the parties' briefs and oral argument, the submitted record, and applicable authorities, we find merit to the petitioner's arguments and, accordingly, reverse the final order and remand this matter with directions for the circuit court to enter an order reinstating the Grievance Board's decision.

## I.  Facts and Procedural Background

In 2019, the Legislature amended West Virginia Code § 18A-4-2, which sets forth the State minimum salaries for teachers, and added subsection (e) providing a three-step salary increase for certain employees, as follows:

1

Effective July 1, 2019, each classroom teacher certified in special education and employed as a full-time special education teacher shall be considered to have three additional years of experience only for the purposes of the salary schedule set forth in subsection (b) of this section: Provided, That for any classroom teacher who satisfies these requirements and whose years of experience plus the three additional years due to them exceeds the years of experience provided for on the salary schedule shall be paid the additional amount equivalent to three additional years of experience notwithstanding the maximum experience provided on the salary schedule.

W. Va. Code § 18A-4-2(e) (2019). The above subsection was in effect from June 24, 2019, to July 4, 2021. The statute was then amended to add the phrase "as defined by the State Superintendent" to subsection (e) and, effective July 5, 2021, provided as follows:

Effective July 1, 2019, each classroom teacher certified in special education and employed as a full-time special education teacher, *as defined by the State Superintendent*, shall be considered to have three additional years of experience only for the purposes of the salary schedule set forth in subsection (b) of this section: Provided, That for any classroom teacher who satisfies these requirements and whose years of experience plus the three additional years due to them exceeds the years of experience provided for on the salary schedule shall be paid the additional amount equivalent to three additional years of experience notwithstanding the maximum experience provided on the salary schedule.

W. Va. Code § 18A-4-2(e) (2021) (emphasis added). Since then, West Virginia Code § 18A-4-2 has been amended two more times. *See* W. Va. Code § 18A-4-2 (2022) and West Virginia Code § 18A-4-2 (2023). While the above provision has been moved to subsection (d) of the statute, the language has remained the same since 2021 except for the reference to the salary schedule, which is now located in subsection (a). *Id.*

2

Soon after West Virginia Code § 18A-4-2(e) became effective in 2019, the respondents were informed that they did not qualify for the pay increase. Consequently, on August 29, 2019, the respondents filed separate grievances[1] maintaining that they are full-time special education teachers, and, therefore, eligible to receive the pay increase. As educational sign language interpreters, the respondents spend their workdays in high school classrooms with hearing-impaired students interpreting the teachers' materials and content for them. Ms. Hall has been employed in this capacity for twenty-five of the twenty-six years she has worked for the petitioner. She is licensed as an associate member of the Registry of Interpreters for the Deaf ("RID"), which satisfies the requirements of the West Virginia Commission for the Deaf and Hard of Hearing. Likewise, Ms. Vaughan has her state licensure and, in addition, national certification. Ms. Vaughan has held her current position for seven of the twenty-seven years she has been employed by the petitioner. The respondents have been assigned the Professional Position Code of 330[2] by the West Virginia Department of Education (hereinafter "Department").

---

[1] *See* W. Va. Code §§ 6C-2-1 to -8 (setting forth West Virginia Public Employees Grievance Procedure).

[2] According to the record, for school year 2019-20, the Department's Professional Position Code 330 was defined as:

> Professional Educational Interpreter – A staff member who meets the definition of professional personnel in WVC § 18A-1-1; possesses at least a bachelor's degree from an accredited institution of higher learning; is registered with the West Virginia Commission for the Deaf and Hard of Hearing; possesses a National Interpreter Certificate (NIC) issued by the Registry of Interpreters for the Deaf, Inc., has passed the

West Virginia Code § 18A-1-1(b) (2009) defines "[p]rofessional person" or "professional personnel" as "those persons or employees who meet the certification requirements of the state, licensing requirements of the state, or both, and includes a professional educator and other professional employee." Under West Virginia Code § 18A-1-1(c):

> "Professional educator" has the same meaning as "teacher" as defined in section one, article one, chapter eighteen of this code.[3] Professional educators are classified as follows:
>
> (1) "Classroom teacher" means a professional educator who has a direct instructional or counseling relationship with students and who spends the majority of his or her time in this capacity;
>
> (2) "Principal" means a professional educator who functions as an agent of the county board and has responsibility for the supervision, management and control of a school or schools within the guidelines established by the county board. The principal's major area of responsibility is the general supervision of all the schools and all school activities involving students, teachers and other school personnel;
>
> (3) "Supervisor" means a professional educator who is responsible for working primarily in the field with professional and other personnel in instructional and other school improvement. This category includes other appropriate titles or positions with duties that fit within this definition; and

---

Educational Interpreter Performance Assessment exam with a performance assessment score of 3.6 or higher, or holds the Quality Assurance Screen (QAS) level III or above; and is employed to provide interpreter services to students.

[3] West Virginia Code § 18-1-1 (2008) defines "[t]eacher" as "a teacher, supervisor, principal superintendent, public school librarian, or any other person regularly employed for instruction purposes in a public school in this state[.]"

4

(4) "Central office administrator" means a superintendent, associate superintendent, assistant superintendent and other professional educators who are charged with administering and supervising the whole or some assigned part of the total program of the countywide school system. This category includes other appropriate titles or positions with duties that fit within this definition[.]

Under subsection (d) of the statute, "'[o]ther professional employee' means a person from another profession who is properly licensed and who is employed to serve the public schools." W. Va. Code § 18A-1-1(d). While the respondents have paraprofessional licenses as interpreters, neither has a teaching certificate.

The three-step salary increase provided in West Virginia Code § 18A-4-2(e)[4] is paid through reimbursements to the counties from the Department. After West Virginia Code § 18A-4-2(e) first became effective, the Department issued a document titled "HB 206 - Frequently Asked Questions – July 30, 2019" to provide guidance on who would be eligible for the pay increase. That document indicated,

> [I]n order to receive the three-step salary increase, a classroom teacher must be fully certified in the content area. They must therefore hold a Certificate Code of 21 (Initial Professional Teaching Certificate), 22 (Professional Teaching Certificate), 23 (Provisional Professional Certificate) or 65 (Permit for Non-US Citizen).

---

[4] Although the statutory language at issue is now found in subsection (d) of the current version of the statute, West Virginia Code § 18A-4-2 (2023), we will refer to its former location in subsection (e) because that is where it was placed in the 2019 and 2021 versions of the statute which are at issue in this appeal.

In a subsequent guidance document titled "Instructions for Preparing and Submitting the Professional Personnel Employment Reports for the 2019-2020 School Year," the Department provided specific "endorsement codes" for special education teachers recognized as being eligible for the three-step pay increase, specifying that the endorsement code could only be associated with a certificate code of 21, 22, 23, or 65, which are the licenses for classroom teachers.

The respondents' grievances were denied at all three levels of the public employees' grievance process.[5]  At the level three hearing before the Grievance Board, Kimberly Olson, Human Resources Specialist for Professional Employees in Kanawha County Schools, testified that the respondents were not included in the list of employees eligible for the three-step salary increase because they do not hold a teaching certificate or a special education endorsement with the Department, both of which are required pursuant to the guidance documents issued by the Department.   In its decision issued on November 24, 2020, the Grievance Board found:

> The [Department] has interpreted W.Va. Code § 18A-4-2(e) to mean that the employee holds a certification in special education, which is also known as an endorsement.  Grievants admit that they do not hold a certification with the [Department] in special education.
>
> . . . [The Department] has made clear through the guidance documents, which explains the specific licenses a teacher must have, and corresponding endorsement codes that

---

[5] From the outset, the respondents' grievances were consolidated for purposes of hearings and decisions.

must be attached to those licenses in order to qualify for the three-step pay increase. Neither Grievant has a teaching license and thus no special education endorsement. Neither Grievant is on the certified list for an employee certified in special education. Grievants are therefore, perceived and deemed by Respondent [petitioner herein] as not "certified in special education" (ineligible for the pay increase).

Upon the denial of their grievances by the Grievance Board, the respondents filed appeals with the Circuit Court of Kanawha County. By order entered September 14, 2021, the circuit court reversed the Grievance Board's decision and found in favor of the respondents. The circuit court concluded that the Grievance Board's decision was "clearly erroneous as it goes against the plain meaning of the statute."

The circuit court found that to be entitled to the salary increase provided by West Virginia Code § 18A-4-2(e), an employee must satisfy three requirements: (1) be a classroom teacher; (2) certified in special education; and (3) employed as a full-time special education teacher. With respect to the first requirement, the circuit court found that the respondents are "classroom teachers" pursuant to a prior decision of the Grievance Board issued in 2014, which involved the same parties herein. The record indicates that in 2013, the respondents were reclassified from service personnel to professional personnel. Because the respondents were reclassified as professional personnel, the petitioner began paying them under the teacher pay scale set forth in the statute at issue but denied them increment pay for their previous experience. The respondents then filed grievances seeking their increment pay and, ultimately, the Grievance Board ruled in their favor in its 2014

7

decision in *Hall and Vaughan v. Kanawha Cnty Bd. of Ed.,* ALJ Ruling No. 2014-0282-CONS (2014).

Based upon the 2014 Grievance Board decision, the circuit court found that the petitioner was collaterally estopped[6] from relitigating the issue of whether the respondents are "teachers." Therefore, the circuit court concluded that respondents satisfied the first requirement for the salary increase under West Virginia Code § 18A-4-2(e). With respect to the second requirement, the circuit court found that "[b]ecause the [respondents] are classroom teachers that have a certification as Interpreters for the Deaf, and education for the hearing impaired is recognized as part of special education, they hold 'a certification in special education.'" Finally, the circuit court found that "it appears to be undisputed that the [respondents] work full-time, and since the Court has already determined they are certified in special education and classify as classroom teachers under the statutory definition . . . the respondents are employed as full-time special education teachers." Thus, the circuit court reversed the Grievance Board's decision. Upon entry of the circuit court's order, the petitioner filed its appeal with this Court.

---

[6] *See* Syl. Pt. 1, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) ("Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.").

8

## II. Standard of Review

This is an appeal of a circuit court order reversing a decision of the West Virginia Public Employees Grievance Board. "When reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. Pt. 1, *Martin v. Barbour Cnty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011). Under West Virginia Code § 6C-2-5(b) (2007):

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
>
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
> (2) Exceeds the administrative law judge's statutory authority;
> (3) Is the result of fraud or deceit;
> (4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

We have explained:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. Pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

With these standards in mind, we consider the parties' arguments.

9

### III. Discussion

The petitioner first contends that the circuit court erred by not considering the 2021 amendment to West Virginia Code § 18A-4-2(e), which added language providing that the State Superintendent determines who is entitled to the pay increase. The petitioner argues that this amendment to the statute rendered moot the respondents' argument that they qualify for the pay increase because the State Superintendent issued guidance after West Virginia Code § 18-A-4-2(e) was enacted in 2019 making it clear that employees like the respondents who do not hold a teaching certificate with a special education endorsement do not qualify for the pay increase. Conversely, the respondents argue that the 2021 amendment to the statute should not be considered because their grievances were filed when the 2019 version of West Virginia Code § 18A-4-2(e) was in effect and there is no indication that the 2021 amendment was meant to apply retroactively.[7]

---

[7] We note that from our review of the record, it appears that the 2021 amendment was not brought to the attention of the circuit court by the petitioner. The record indicates that the briefing was completed by the parties and submitted to the lower court before the 2021 amendment became effective, but the circuit court's decision was issued afterward. Although the amended version of the statute was not considered below, we are not precluded from determining its impact in this appeal as our review is plenary. *See* Syl. Pt. 1, *Cahill; see also State v. Blake*, 197 W. Va. 700, 706 n.10, 478 S.E.2d at 550, 556 n. 10 (1996) ("'"When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."' *United States National Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402, 412 (1993), quoting *Kamen v. Kemper Financial Services*, Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 1718, 114 L.Ed.2d 152, 166 (1991))."

We have a long established "presumption of prospective application of statutes unless the intent for retroactive application is expressed within the statute." *Foy v. Cnty. Comm'n of Berkley Cnty.,* 191 W. Va. 29, 32, 442 S.E.2d 726, 729 (1994). As syllabus point four of *Taylor v. State Comp. Comm'r*, 140 W. Va. 572, 86 S.E.2d 114 (1955), provides: "The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." *See also* Syl. Pt. 4, *Arnold v. Turek*, 185 W. Va. 400, 407 S.E.2d 706 (1991) ("'"A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." Syllabus Point 3, *Shanholtz v. Monongahela Power Co.*, [165 W.Va. 305], 270 S.E.2d 178 (1980).' Syllabus Point 2, *State ex rel. Manchin v. Lively*, 170 W.Va. 672, 295 S.E.2d 912 (1982)."). We have recognized that *Taylor* "set outs two approaches to determining whether a statute is to be applied retroactively." *Christopher J. v. Ames*, 241 W. Va. 822, 829, 828 S.E.2d 884, 891 (2019). In that regard,

> First, a determination of legislative intent can be made by examining the text of the statute to see if there are "clear, strong and imperative words" in the statute that show the legislative intent for retroactive application of a statute. . . .

> The second manner in which syllabus point 4 of *Taylor* instructs that the legislative intent on retroactivity can be determined is if "it appears . . . by necessary implication."

*Id.*

11

We agree with respondents that in amending West Virginia Code § 18A-4-2(e) in 2021, the Legislature did not include any clear, strong, and imperative words indicating the statute applies retroactively. However, our analysis does not end there. When we utilize *Taylor*'s second approach for determining whether a statute should be applied retroactively, we find that the Legislature by necessary implication intended the 2021 amendment of West Virginia Code § 18A-4-2(e) to have a retroactive effect.

Our analysis under *Taylor*'s second approach is guided by our rules of statutory construction. *Christopher J.*, 241 W. Va. at 829, 828 S.E.2d at 891. "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953). We have explained that "[i]n ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975); *see also* Syl. Pt. 7, *State ex rel. Goff v. Merrifield,* 191 W. Va. 473, 446 S.E.2d 695 (1994) ("'''''A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5*, State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).' Syl.Pt. 1, *State ex*

*rel. Simpkins v. Harvey*, [172] W.Va. [312], 305 S.E.2d 268 (1983)." Syl.Pt. 3, *Shell v. Bechtold*, 175 W.Va. 792, 338 S.E.2d 393 (1985).' Syl.Pt. 1, *State v. White*, 188 W.Va. 534, 425 S.E.2d 210 (1992)."). Therefore, "[w]here a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W. Va. 774, 200 S.E. 350 (1938). To that end, "'[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' Syllabus point 14, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)." *Smith*, 159 W. Va. at 109, 219 S.E.2d at 362, syl. pt. 4.

As noted above, when the Legislature amended West Virginia Code § 18A-4-2(e) in 2021, the only change it made was the addition of the phrase "as defined by the State Superintendent." No language was removed from the subsection and, most notably, the effective date for implementation of the salary increase remained the same—July 1, 2019. Applying our rules of statutory construction, we find that by not changing the effective date for implementation of the salary increase, the Legislature intended the 2021 amendment to operate retroactively. Indeed, it is impossible to give effect to each part of the statute and to conclude otherwise. Furthermore, it would be absurd to conclude that the State Superintendent had no authority to determine who was entitled to the pay increase until two years after the raise was given.

13

The respondents counter that if the effective date for implementation of the salary increase had also been amended to July 5, 2021, the date the new language—*as determined by the State Superintendent*—became operable, "then all the individuals who were given the increment pay thereunder, would have had to return the money as they would not have been entitled to the increment pay until after the new effective date." Clearly, there is no merit to this argument as amendments to statutes do not nullify the previous version of the law. If the Legislature had intended for the State Superintendent's determination of who qualifies for the pay increase to apply only after the operative date of the 2021 amendment, it would have also changed the effective date for implementation of the pay increase. By not doing so, we find that by necessary implication the 2021 amendment to West Virginia Code § 18A-4-2(e) applies retroactively. And, because the State Superintendent has issued guidance that makes clear that the respondents do not qualify for the salary increase because they do not hold teaching certificates with special education endorsements, we agree with the petitioner that West Virginia Code § 18A-4-2(e) (2021) is dispositive of the respondents' grievances. Accordingly, we reverse the circuit court's order.

As a final matter, we believe it necessary to briefly address the circuit court's misinterpretation of the Grievance Board's 2014 decision. Upon review, we find, contrary to the circuit court, that the Grievance Board did not determine in its 2014 decision in *Hall and Vaughan v. Kanawha County Bd. of Education*, that the respondents are "classroom teachers." While that grievance decision does include some language indicating that the

14

respondents could be deemed "teachers" under the broad definition of "teacher" in chapter eighteen of the West Virginia Code,[8] the Grievance Board ultimately concluded that respondents are "other professional employees," not "teachers." In that regard, the Grievance Board explained in its 2014 decision:

> There are only two salary schedules for school personnel, the schedule at issue [i.e., the teacher schedule] and a schedule for service personnel. *Compare* W. VA. Code § 18A-4-2 *with* W. VA. Code § 18A-4-8a. As professional employees, Grievants cannot be paid under the service personnel schedule, which leaves only the "teacher" schedule. If the "teacher" schedule was construed to exclude Grievants because they do not meet the definition of "teacher," they, and the handful of like "other professional" positions, would be the only school personnel position not paid under a legislative salary schedule guaranteeing certain minimum payment. . . .
>
> The only interpretation that fits within the definitions of the two chapters [Chapters 18 and 18A of the West Virginia Code] read as a whole, is that the "teacher" salary schedule is meant to be applied to Grievants as professional personnel, and that the experience increment is also meant to apply to their relevant experience.

Given that decision finding that the respondents are classified as "professional personnel," they are not "classroom teacher[s]" under any version of West Virginia Code § 18A-4-2(e), now subsection (d). Therefore, they do not qualify for the salary increase provided therein, even in the absence of the 2021 amendment.

---

[8] *See* note 3, *supra*.

15

## IV. Conclusion

For the foregoing reasons, the September 14, 2021, order of the Circuit Court of Kanawha County is reversed, and this case is remanded to the circuit court for entry of an order reinstating the November 24, 2020, decision of the West Virginia Public Employees Grievance Board denying the respondents' grievances.

Reversed and remanded with directions.

16